

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

GERALD C. MANN
ATTORNEY GENERAL

February 14, 1939

Honorable W. Lee O'Daniel
Governor of Texas
Austin, Texas

Dear Governor O'Daniel:          Opinion No. O-315
                                 Re: H. B. No. 179

We are pleased to comply with your request of February 9 for an opinion of this Department on the constitutionality of House Bill No. 179, which was recently passed by the Legislature. Copy of the Bill is attached hereto.

Briefly, this Act provides for the issuance before September 1, 1939, of interest-bearing warrants not to exceed $900,000.00 for payment of old age assistance benefits and refunding of prior warrants, said warrants to be paid serially with interest, before September 10, 1940, out of the revenues of the Texas Old Age Assistance Fund.

The purposes for which these warrants are to be issued are authorized by Article III, Section 51b, of the Constitution of Texas, commonly known as the Old Age Pension Amendment.

Article III, Section 49 of the Texas Constitution, provides:

"No debt shall be created by or on behalf of the State, except to supply casual deficiencies of revenue, repel invasion, suppress insurrection, defend the State in war, or pay existing debt, and the debt created to supply deficiencies in revenue shall never exceed in the aggregate at any one time two hundred thousand dollars."

Our Supreme Court has repeatedly held that the issuance of warrants by the State, a county or a municipality in anticipation of current revenues does not create a "debt" so as to come within the prohibition of this and related constitutional provisions. See McNeill v. City of Waco, 89 Tex. 83, 33 S.W. 322; City of Corpus Christi v. Woessner, 58 Tex. 462; Terrell v. Dessaint, 71 Tex. 770, 9 S.W. 593. This doctrine was clearly stated by the Texas Supreme Court speaking through Pierson, J., in Charles Scribner's Sons v. Marrs, 262 S.W. 722:

"Obligations that run current with revenues are not debts within the contemplation of the Constitution."

The fact that appropriation is made in this Act for the payment of these warrants by September 10, 1940, brings it within Article VIII, Section 6, of the Constitution, which says:

"No money shall be drawn from the Treasury but in pursuance of specific appropriation made by law, nor shall any appropriation of money be made for a longer term than two years."

Chapter 495, page 2040, et seq., Acts 1936, Forty-fourth Legislature, Third Called Session, levies certain taxes, the proceeds of which are paid unto the Texas Old Age Assistance Fund, which revenues, possibly augmented by those derived from other taxes which may be levied by the current session of the Legislature, may reasonably be presumed to be adequate to pay the warrants upon the schedule provided in H. B. No. 179.

It may be noted that the wording of Sections 1, 2, 3, 4, 8 and 9 of this Act are identical with corresponding provisions of Chapter 496, page 2084, Third Called Session of the Forty-fourth Legislature, enacted in 1936, providing for the issuance of $3,000,000.00 worth of interest-bearing warrants in lieu of cash old age benefit payments. Sections 5 of the two Acts are identical with the exception that the 1936 Act limited the warrants in amount to $3,000,000.00, whereas the present Act limits the amount to $900,600.00.

Sections 6 and 7 of the present Act provide for the refunding of any outstanding warrants of the 1936 issue, prescribe the method and procedure of issue of the new warrants; appropriate funds for payment and prescribe the schedule of payment.

None of the provisions of H.B. No. 179 which differ from the 1936 Act can raise any question of constitutionality with the possible exception of Paragraph 6 of Section 7, which reads:

"When such obligations shall have been issued in accordance with a resolution adopted by the Texas Old Age Assistance Commission, and shall have been approved by the Attorney General, they shall be incontestable and the full faith and credit of the State shall be pledged to their payment."

The Old Age Pension Amendment to the Constitution (Article III, Section 51b) makes no provision for the issuance of negotiable paper by the State. In accordance with the familiar rules of statu-

tory construction, paragraph 6 of Section 7 of the Act should be given the reasonable interpretation which will keep it within constitutional limitations. City of Austin v. Cahill, 99 Tex. 172, 88 S.W. 542. Accordingly the word "incontestable" shall not be construed to mean "negotiable". The warrants may be incontestable when properly issued to eligible recipients, but they may not acquire the immunity of negotiable paper in the hands of holders in due course. So to construe the paragraph would exceed the limitations of Article III, Section 49, of the Constitution. City of Brenham v. German-American Bank, 144 U.S. 173, 12 Sup. Ct. Rep. 559, 36 L. Ed 390; Lasenter v. Lopez (Tex. Sup. Ct.), 217 S.W. 373. The very use of the word "warrant" in this Act indicates that the Legislature did not intend these warrants to be negotiable. Heel v. Fulte (Tex. Comm. App.), 10 S.W. (2d) 695.

In accordance with the foregoing observations, it is our opinion that House Bill No. 179 constitutes a valid exercise of legislative authority under the Constitution of Texas.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By

Walter R. Koch
Assistant

WK:BT:mrj

APPROVED
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS